NELLIE WOODARD V. PERRY E. BAIRD ET AL.

FILED JANUARY 3, 1895. NO. 6786.

1. **Appeal and Error:** ELECTION BY FILING PETITION. When a case is, in its nature, appealable, and the party seeking a review files in connection with the transcript a petition in error, he will be deemed to have elected to proceed in error and not by appeal.

2. **Review.** A case will in general be reviewed in this court, only with reference to the theory adopted by the parties in the district court.

3. ———: CONTRACTS: PRACTICAL CONSTRUCTION BY PARTIES GOVERNS. Therefore, where the action was brought upon a contract somewhat ambiguous as to its nature, but both parties in the district court concurred in construing it in a peculiar manner, neither will be permitted in this court to urge a different construction.

4. ———: CONCLUSIVENESS OF TRANSCRIPT. An affidavit filed with the record in this court, stating when the terms of the district court were held, is incompetent to contradict a contrary showing in the transcript of the record itself.

5. ———: COSTS: TAXATION. In cases where no other statutory provision controls, the awarding and taxation of costs rests in the discretion of the trial court and will not be reviewed except for abuse of discretion.

ERROR from the district court of Dawes county. Tried below before KINKAID, J.

*Spargur & Fisher,* for plaintiff in error.

*C. H. Bane, D. B. Jenckes, W. W. Wood, Perry E. Baird,* and *J. R. Webster, contra.*

IRVINE, C.

Perry E. Baird and Mary J. Baird were plaintiffs in the district court, and Nellie Woodard defendant. The moving party in this court is Nellie Woodard, who filed a transcript here, accompanied by a petition in error, and also by a paper entitled "Assignments in error upon appeal." The case was in its nature appealable, and from the briefs it would seem to be the object of Woodard to have the case treated as brought here both by appeal and by petition in error. This course is not permissible. A party must elect which remedy to pursue, and having filed a petition in error, she must be presumed to have selected that remedy. The case will, therefore, be treated as a proceeding in error. (*Burke v. Cunningham,* 42 Neb., 645.)

On March 12, 1892, the Bairds entered into a written contract with Woodard, providing that the Bairds agreed to lease to Woodard the "east one-half of the west 44 feet of lots 15, 16, 17, in block 11, in the city of Chadron, being the east one-half of the brick building known as Central Block;" that the lease should begin April 1, 1892, and terminate October 1, 1893, and that in consideration thereof Woodard should pay to the Bairds $800 upon the execution of the lease; $223.66 on or before June 1, 1892; $40 on or before July 1, 1892; $80 on or before January 1, 1893; one-half of the taxes upon Central Block for 1892 to be paid on or before May 1, 1893; $80 on or before July 1, 1893, and one-half of the premium necessary to keep the Central Block insured in the sum of $6,000 during the continuance of the lease. The contract then proceeded as follows: "Now, therefore, it is agreed that if the above covenants and agreements are kept and performed by

the said party of the second part, and the said sums paid
as stipulated therein, then, and upon the fulfillment of those
covenants and conditions, the said party of the first part
will, at the expiration of the said lease, sell and transfer to
the party of the second part the said property herein leased,
with the usual covenants of warranty, upon the terms and
conditions as follows: Two thousand six hundred and
twenty-five dollars to be paid down in cash by the said
party of the second part to the said party of the first part
when the sale and transfer of said property is made, to-
wit, upon the 1st day of October, 1893, and for the bal-
ance of the consideration for said property the said party
of the second part shall at the same time, to-wit, upon the
1st day of October, 1893, execute and deliver to said Perry
E. Baird two notes in the sum of $500 each, in favor of
said Perry E. Baird, and secure the same by mortgage
upon the property herein above mentioned, to be purchased
by the said party of the second part upon October 1, 1893;
one of the said notes to be due and payable on or before
April 1, 1894, and one to be due on or before October 1,
1894; and each of said notes to draw interest until paid
at the rate of ten per cent per annum, interest payable
semi-annually, thus making the total sum of $3,625 in
money and notes to be paid by the said party of the second
part at the time the sale and transfer of said property is
made, to-wit, upon the 1st day of October, 1893, which
sum is in addition to the sums which are to be paid under
the said lease prior to October 1, 1893.

"It is further agreed that if the party of the second
part should desire to procure a loan to enable her to meet
the payment of the said $2,625 to be made at the time of
the purchase of said property, to-wit, October 1, 1893, the
said party of the second part shall be allowed to secure said
loan to the extent of $2,000, by giving a first mortgage
upon said property to be bought by her as aforesaid, provid-
ing the face value of the note or notes thus to be secured

by the said mortgage shall not in the aggregate exceed the sum of $2,000, and in case the said loan of said $2,000 shall be made by the said party of the second part and secured by mortgage as stated above, then and upon that event the two notes of $500 each, in favor of said Perry E. Baird, which have been mentioned above, shall be secured by mortgage upon said property, second to the said mortgage of $2,000, otherwise the said two notes of $500 each are to be secured by first mortgage, provided always that this agreement is not a present sale of said property, but is an agreement to sell at a future time upon the fulfillment of certain conditions precedent to said sale, and the title, ownership, and possession of the said property remains in the party of the first part until the sale and transfer is made, and the possession of the party of the second part under the lease herein specified to be made, is and shall be in the possession of the tenant and not of the ownership, and the party of the first part shall have the right to take possession of said property by the terms of the said lease, as provided by law in leasing property, in the same manner as though this agreement were not made, providing that the terms of the said lease are not complied with.

"It is further provided and agreed that this contract and agreement is not to be delivered to either of the parties hereto, but is to be placed in the escrow with the Bank of Chadron, and is to be returned to the parties of the first part, or either of them, on or by the 1st day of November, 1893, providing the covenants and agreements made by the party of the second part shall not by that time be fulfilled, and upon the failure of the party of the second part to fulfill her covenants and agreements by the 1st day of November, 1893, then and in that case, the parties of the first part shall be released from any and all obligations under this contract and agreement."

On the 16th day of October, 1893, this action was begun, the petition alleging the making of the contract just

described and the delivery of possession to Woodard; that Woodard had paid certain specified sums amounting to $1,743.66, in addition to a portion of the insurance provided for in said contract. The petition then averred that Woodard had failed to pay her portion of the taxes amounting to $134.90, and her portion of the second year's insurance premium, as well as certain portions of other payments provided for in the contract. It was further alleged that there existed an incumbrance upon the whole of said Central Block in the nature of a mortgage securing $4,000 to the Dakota Loan & Trust Company, which mortgage was then due, and that the plaintiffs were ready and willing to pay the same upon compliance by the defendant with the covenants set out in said contract; that the plaintiffs were ready and willing, and thereby tendered a deed in court to the defendant for delivery upon her compliance with her contract, and generally the plaintiffs pleaded that they had performed all the conditions of the contract upon their part, and that the defendant refused to pay the purchase money. The prayer was that the defendant be required to perform and pay the remainder of the purchase money, and that in default thereof the premises be sold and applied to the payment thereof and for a deficiency judgment. There were also allegations to the effect that Nellie Woodard was insolvent, and that the property at that time was insufficient in value to discharge the indebtedness and there was a prayer for a receiver.

To this petition Woodard filed an answer, beginning by a denial of all allegations not specifically admitted. Then there was an admission of the execution of the contract of sale "and purchase of the real estate in controversy as stated." The answer then alleged that the plaintiffs could not convey the property clear of incumbrance, and that they had failed to release the same from the lien of a certain mortgage for the sum of $4,000 due and payable July 1, 1893, which mortgage was still in force and remained

wholly unsatisfied; that the purchase price of said premises was $5,500, with eight per cent interest from March 1, 1892, and that Woodard had paid thereon the sum of $1,800 and upwards. Then follows this clause: "This defendant alleges that when the plaintiffs shall have released the said premises from obligation of said $4,000, which she prays they may be compelled forthwith to do, she will be ready and willing to fulfill the said contract according to the terms thereof. Wherefore this defendant prays that the action of these plaintiffs be dismissed, or that a decree be had herein declaring that the discharge of the said $4,000 be made a condition precedent in the performance of the said contract and for such other and further relief as may be just and equitable."

A decree was rendered finding due upon the contract the sum of $3,466.41, providing that within thirty days the plaintiffs should procure and deposit in the Bank of Chadron for delivery to the defendant a release of the mortgage to the Dakota Loan & Trust Company, and that said release should be delivered to the defendant upon her making the payments required in the decree, then providing that the defendant should, within thirty days, pay into the Bank of Chadron as much of the purchase money as should be necessary to secure such release, and that the balance should be paid to the plaintiffs or into the bank for their benefit; that the defendant should also pay the taxes for 1892, and execute two notes as provided in the contract, with a further provision permitting the placing of a senior mortgage upon the premises for $2,000, as provided in the contract. The decree then ordered that if the plaintiffs should procure the release as required within the time specified, and if the defendant should fail to perform the conditions upon her part, then the premises should be sold as upon execution, for the satisfaction of the whole amount due the plaintiffs. At the same time a receiver was appointed "to take charge of said premises during the pend-

ency of this action and until final determination and disposition thereof be made by the court," etc.

The errors assigned in the petition in error will be considered *seriatim*. "There is no term of court ordered of record to begin January 2d, 1894." The record recites that the proceedings were had at a special term begun and holden on the 2d day of January, 1894, therefore this assignment of error is not sustained by the record as there is nothing to show when the term adjourned. It is true that there is an affidavit in the record showing that no term was called for that time, but this affidavit is not in any manner authenticated, and is incompetent evidence as against the certified transcript of the record.

The petition "does not state facts sufficient to constitute a cause of action." It would certainly be a very reasonable construction of this contract to hold that it contemplated a present lease of the premises with an option of purchase to be exercised by payment of the purchase money and securing the deferred payment at any time before November 1, 1893, a date after this suit was begun, and if such option was not exercised, then that the contract should never take effect as a contract of sale, but that the vendee's rights should simply be forfeited. The defendant did not, however, contend for any such construction. The plaintiffs treated it as a contract of sale and the defendant met it in her answer by an allegation that it was such a contract and that she were willing to perform; she only asked that the plaintiffs be required to discharge the incumbrance. The court granted her all the relief she asked. A case must be reviewed in this court upon the same theory upon which it was presented in the district court, and the defendant having treated this as a contract of sale and averred her willingness to perform if the mortgage were released, she cannot here be heard to urge that the contract should be otherwise construed. She did not in her answer or otherwise in the district court set up that the action was prematurely brought

and after such an answer she cannot be here permitted to do so.

The court erred in "denying the motion for a new trial." The motion for a new trial contains nine assignments, and this assignment of error is therefore too indefinite for consideration.

"The decree is not for any definite amount, and there is no finding of any exact amount due upon which to base a decree." This assignment is not supported by the decree, which is for an exact and determined amount. Counsel argue in their brief that the amount found was too large but this is not assigned as error.

"The court erred in taxing costs against defendant." The taxation of costs in a case of this character was in the discretion of the trial court (Code of Civil Procedure, sec. 623), and its action will not be reviewed except for abuse of discretion. If it had been made to appear that the default of the defendant in making payments had been due to the failure of the plaintiffs to discharge the incumbrance it might have been considered an abuse of discretion to tax the costs against the defendant, but when it was not pleaded and did not appear that the defendant had tendered the purchase money or offered upon her part to perform, we do not think there was any abuse of discretion in taxing costs against her.

"The court erred in failing to dismiss the action in the court below." What we have already said in regard to the effect of the defendant's answer disposes of this assignment. The court treated the case just as both parties asked to have it treated and the defendant cannot complain thereof.

"For other errors prejudicial to plaintiff in error manifest upon the face of the record." This assignment is too vague for consideration.

The plaintiff in error has, therefore, failed to present any reason for reversing the judgment. She argues in her brief a number of questions not raised by any assignment of

error.   Among these is the propriety of the order appoint-
ing a receiver.   In affirming the judgment we do not wish
to be considered as approving the action of the trial court
in that respect.   By the pleadings and the terms of the de-
cree it is apparent that the defendant could not be required
to perform until the plaintiffs should discharge the mort-
gage.   The plaintiffs being so in default the court should
not have wrested the possession from the defendant by the
appointment of a receiver, and should not in any event
have appointed a receiver "pending the action" in the
final decree, there being nothing then made to appear
which would prevent the conclusion by sale or otherwise
of the whole controversy, within a very brief period.

JUDGMENT AFFIRMED.